vs. Margaret Rodriguez-Appleby v. Danny Tuchon. Mr. Scodro, you may proceed. Thank you, Your Honor, and may it please the Court. Good morning. Good morning. I'm Michael Scodro on behalf of the plaintiff, Appellant Wells Fargo. Your Honors, in our briefs we offer three independent bases on which to reverse the judgment below. And I'm inclined to begin with the most obvious and straightforward of those three this morning, which is the Court's involuntary dismissal of the second complaint for failure to follow the HUD face-to-face rule. When that complaint was involuntarily dismissed, the loan was undoubtedly reinstated, requiring monthly payments going forward in the normal course by operation of the new default rule, which is the background principle behind all of what we're discussing today. The acceleration had ended at that point in time. At the very latest, Your Honor. Now, we obviously offer three arguments, and we can talk about the effect of the voluntary dismissal of the first complaint. But I'm starting with what I think is the most straightforward answer here, because there is no dispute under Illinois law. The Sigler decision on which plaintiffs rely for its holding with regard to the effect of a voluntary dismissal, itself in paragraph 54 says, if this had been an involuntary dismissal, we would reach a different result. And indeed, the Moy decision in the second district picks up on that paragraph 54 in a case involving involuntary dismissals and says, and I quote, that the court, in granting an involuntary dismissal to the borrower, the court, quote, effectively rules upon and denies the notice of acceleration. So at a minimum, when the second complaint had the effect of reinstating the loan, and indeed, if there were any doubt on the facts of this case, if more were needed, and we would say more is not needed, but if more were needed, both the note signed by the defendant in this case of paragraph 6, the mortgage signed by the defendant at paragraph 9, those are pages C40 and C35 in the common law record, both say that no acceleration is permissible under these instruments if it's in violation of a HUD regulation. And it's the violation of a HUD face-to-face regulation that was found in connection with the second dismissal. I'm going to ask a practical question here. What difference does it make for your client? Is it the collateral? So, Your Honor, if the plaintiff's, excuse me, if the defendant's rule, the borrower's rule holds here, then under the single refiling rule, Wells Fargo is no longer, no longer has recourse in a foreclosure action to notwithstanding any ongoing nonpayment. We've had nonpayment since 2012. When the complaint was dismissed involuntarily, we followed the rule. You said no owner. Who's the owner? I'm sorry, oh, nonpayment by the owner. Excuse me. Or by the borrower. I'm sorry, Your Honor. Nonpayment by the borrower. And this is precisely the effect that's contemplated by Illinois law in the event of this specific violation of the HUD face-to-face rule. The circuit court's or the appellate court's decision in Alavera actually explains this. It says, look, whereas here you have a violation of this HUD face-to-face rule, which requires a good faith effort to meet or an actual meeting within the first three months of default. When you have that, when you haven't complied, as the court concluded here in the second complaint, then what you, the lender, has to do is get in compliance, have that or attempt to have that meeting, and forgive all of that principal due prior to your cure of the HUD face-to-face rule. At that point, the second district goes on in the Alavera case, and with the court's permission, I would read just one sentence from that decision. The court says, after forgiving past missed payments, precisely what happened here, $47,000 in principal forgiven, waiting for potentially more missed payments, precisely what happened here as alleged in the third complaint, more missed payments, waiting, excuse me, and timely complying with the regulations, having that face-to-face or attempting to do so, plaintiff could, the lender could, legally file a new complaint with a new default date, and that's precisely what happened here. New complaint in foreclosure. New complaint in foreclosure, Your Honor. Exactly correct. Because you have two separate instruments here. We do. There's a note and the mortgage. That's exactly right. So, in effect, the real risk is losing the clarity. The real risk is losing... I mean, I just like it simple. Yes, I mean... Because you still have a right under the note. We do still have a right under the note, Your Honor. I don't want to, as I stand here, hazard to guess what a court would conclude if we were to proceed solely under the note. The Cabo decision involved some of that, where you had both a personal liability on the note as well as a foreclosure action. You had both in play. But, yes, they are separate instruments. I also just want to note that, in addition to this being what every decision, Sigler, Moy, Oliveira, require in the case of an involuntary dismissal, it's the rule that borrowers, by and large, should watch. Now, under the specific facts of this case, where you had a combination of a first voluntary dismissal followed by an involuntary dismissal, under these circumstances, defendants are in a position of wanting to argue that even an involuntary dismissal, even an outright win on the merits for the borrower does not reinstate their loan, keeps the loan accelerating so that they're due to pay the entire amount of that principal immediately. That can't be the rule that most borrowers would want to see in place. Had this not been the combination of events, had this been, say, the first complaint dismissed for failure to follow the HUD face-to-face rule, I can't imagine a borrower wouldn't want a rule that says, notwithstanding my win and an involuntary dismissal of the bank's complaint, nevertheless, I recognize that my loan remains entirely accelerated. I'm not back to monthly payments to keep my home. Instead, the entire amount is due in owing. But based on this unique procedural posture, that's the position that the borrowers are in in this instance, and that's the rule that they're arguing for. Again, it would be a first of kind ruling to that effect in Illinois, contrary to both Sigler and Moy, and indeed was contemplated in Oliveira when it talks about the remedy for this specific HUD violation. So voluntary dismissals are not counted against the plaintiff? Voluntary dismissals are not counted against the plaintiff for involuntary dismissals, Your Honor. You say? Voluntary. Oh, voluntary dismissals. So with regard to the voluntary dismissal, that is a separate and independent argument we have. I'm sorry. Involuntary. Oh, very good. When the judge dismisses the case, that's not counted against them? Not for purposes of the single refiling rule, Your Honor. Exactly right. So the bank could file a complaint, have it dismissed because they didn't do it properly again and again and again and again. Doesn't that seem to be against the spirit of the one refile rule? Not at all, Your Honor, because in each of those instances there is real impact on the bank. In this case, for example, the remedy was wiping out for nearly $50,000 of principal, a huge percentage, by the way, a significant percentage of the outstanding balance of principal in this case. So that would not be to any bank's advantage to violate, say, the HUD requirement to continually give up big chunks of principal in order to go back into court. And indeed, it's precisely, as I say, what's contemplated by this. Even the case announcing this remedy for this specific HUD violation contemplates that, yes, well, of course, under those circumstances, you could be back in court with a new if, if those monthly payments aren't made yet again. And I would remind Your Honor, too, the background principle we're talking about here, I mean, acceleration is sort of creating the complexity here, but the background rule is very simple, and that is the new default rule. And I think no one in this courtroom disagrees on this issue, none of the parties, and certainly none of the cases disagree, but that is the background principle when you have an ongoing repayment obligation, whether it's residential mortgage borrowing or any other context. If you have, let's say, monthly payments, the courts recognize time and time again that you have, with each new missed payment, you have created a new cause of action for the lender. And so it would be consistent with that background principle that the bank could come back, but in Your Honor's hypothetical, it would be very costly to the bank to do so, because with each violation, they would be foregoing. So what's the purpose of the rule, then? What's the purpose of the statute? So the statute, and I should say, the statute applies broadly. It's obviously not limited to the lending context. The statute exists. I mean, essentially, it's an extension. 217, as originally as drafted, really just provides a year at least to, if you voluntarily dismiss. I think it's intended to ensure that those who choose to voluntarily dismiss, and there are all kinds of public policy reasons why we may want to encourage and protect that action, those folks are not going to be bounced on limitations grounds for anything less than a year when they refile. It's been interpreted, of course, by the Supreme Court to say it's one and only one, and I think that interpretation is designed so that in the normal course, if you are bringing the very same case, your dog bit me, and I file, and I voluntarily dismiss, and then I wait 11 1⁄2 months, and I file it again, same claim, 11 1⁄2 months, same claim. That's what it's trying. It's trying not to use what is intended to be a one-year kind of buffer for the dismissing party as a way to perpetually rebring a claim. In other words, courts aren't going to be party to weaponizing. Exactly. But in those cases, it's exactly, it's the same claim, and that's why the courts have used res judicata principles to interpret 217, because they have to say, well, what is the same claim? How do we know we have a new claim? And what the courts have unanimously said, putting acceleration to one side, what they've unanimously said is that when you have a series of payments due over time, in this case, monthly payments, when you're in that scenario, each new missed payment for res judicata purposes, for Section 217 purposes, is a new claim for the lender. And the exception to that, and the reason we're here debating this, the exception is, well, look, if you accelerate your loan, the courts have said, and therefore are demanding the entire principle, 370,000, let's say, if you accelerate it and demand that, and then you voluntarily dismiss, and then you accelerate it, you know, it stays accelerated, or you accelerate it again, and you seek the same 370, that's like suing over and over for the same dog bite. But what these courts have recognized, Sigler, Moy, and others, and it's commonsensical, is if, on the other hand, you lose on that claim and have to bring a different claim, in this case, for monies owed starting seven years later, now that you've complied with HUD, under those circumstances, because you've lost on that initial claim, you have a new claim. The single repayment rule is back, or the, excuse me, the new default rule is back in effect, and with each failed payment, a new cause of action arises. What you're saying is in mortgage foreclosure actions, the single filing rule has to take a little bit different perspective than in other areas of civil law. Yes, Your Honor, and I would just, the only thing I would say is what the courts have expanded that slightly to say any instance where there are installment repayments required by the borrower, exactly. Because otherwise, you would have an instance in which you sued for the first failure to pay in January, and for some reason, you chose to voluntarily dismiss because you want to work something out with the borrower, which is often in both parties' best interests, and then you try to re, you know, you bring a new claim because they've not paid in February and March. You're trying to collect on those. That's why there's this exception in this instance, or if not an exception, it's the way race judicata has been interpreted, that each of those is a new claim. Each of those is a new dog bite. And what the Illinois courts have unanimously to date concluded is that when there is an involuntary dismissal, in a case involving mortgage lending, that reinstates the loan. The borrower has won on the merits, and therefore, their loan is reinstated. They're not on the hook now for every penny of principal. Does anybody know to find that they're no longer under acceleration? So, Your Honor, there's nothing. We're still at a motion to dismiss. There's nothing in the record one way or the other. I will say that each of the complaints, the second and third complaints, speak expressly about missed monthly payments. The complaints themselves show that Wells Fargo has been treating this as a regular reinstated loan with monthly amounts due. An affidavit that was filed in connection with the third complaint from Wells Fargo, just talking about the amounts that are being sought, shows that no late fees were due on past principal not paid. Again, all of these are indicia. There's nothing to suggest that monthly statements were not being received by the borrower here. But, again, in a motion to dismiss, that's not in the complaint, but it's certainly not denied in the affidavit submitted by the defendant in the case either, Your Honor. And to return to the note and the mortgage, both documents provide that in the event that acceleration would be inconsistent with HUD regulations, that acceleration is not allowed for under those instruments. So that's further notice that the violation of the HUD requirements is going to result in proceeding as normal under the terms of the note and the mortgage. Your time is up. Thank you, Your Honor. Thank you. Thank you, Your Honor. You'll have time to reply. Thank you. Hello, Your Honor. Counsel. Daniel Quadra, attorney for the appellee. So I'd like to initially state, there's a real simple question before this court today, and that question is, when does a single refiling rule apply in a mortgage foreclosure action under plaintiff's theory of the case? The answer is never. Mere passage of time will allow them to continue to refile their case anew without modification, without reinstatement, without a new promise to pay. There's nothing that changed the operative terms of this agreement and created a new cause of action. I should note that the Illinois Supreme Court has explicitly and implicitly rejected the arguments found here. That case involved a mortgage loan and a voluntary dismissal followed up by a second and permissible refiling. The Supreme Court upheld the dismissal of the first district, finding they violated the single refiling rule. As this court knows, our statute is clear and unambiguous. Judicial construction is neither necessary nor permitted. The single refiling rule allows you to file once after a voluntary dismissal. Plaintiff was focusing on the second case in his analysis, but the analysis begins at the first case. In 2017, plaintiff took a voluntary dismissal. Then the statute took effect and they were allowed to refile one more time. They did lose the second case on an involuntary dismissal. But the Timberlake Supreme Court says, under the statute, a reason a cause of action was originally dismissed is important in determining whether a plaintiff can subsequently refile. But after this case has been filed a second time, the reason for the second dismissal is of no consequence at all. So the plaintiffs focused on the second case, why they lost, and what they did is irrelevant. The first case was voluntarily dismissed. They were allowed one refiling, and they subsequently lost on involuntary dismissal. The third case, this case that they refiled, violated the single refiling rule. As I've stated, there's nothing here that has changed the cause of action, which is a point of topic in Hutchinson's opinion and Dubervet as well as the secret court. Because otherwise, as we've stated and provided exhibits, on June 15, 2012, the plaintiff caused to be sent to the defendant a notice of default letters advising that if this default was not paid by July 19, 2012, the loan would be accelerated. So under the contract, as this is a contractual interpretation, they accelerated the loan. They demanded the full amount due. And that acceleration remained in effect throughout the three cases, and there was one default. And it's worth noting in the first case, the original complaint filed in 2012 alleged a default of May of 2012. Four years later in that same case, they amended their default, May of 2012. That is the cause of action in this case that has gone through the three complaints. There's no evidence whatsoever to suggest there's modification, reinstatement, or something that would have changed the cause of action to allow them to refile. As I mentioned, as I prefaced in the beginning of this case, what they're really asking is that the statute never applies. They can say, hey, five years have passed. That's five years of missed payments. We can just keep refiling and refiling and refiling until we get our win in the court. You have to have a starting point. The starting point is the cause of action where if they demand the full amounts due and the note has been accelerated, they've now invoked the acceleration clause. The trial court, who took the case under advisement, had a series of continuances, and then wrote a long opinion, went through all the cases, and he determined that this case is like Sigler. There was an invocation of the acceleration clause following one default, and the plaintiff violated the rule. The court heavily relied on Sigler, but he also distinguished these cases from cases such as Dubervet where there was no acceleration clause in the record. Since First Midwest Bank, First Cabo, the lenders have tried to get around that decision in 2018 by simply changing the default date, even when there's been no material changes of the agreement. They've also tried to lobby the legislator. They introduced Illinois Senate Bill 3035, which proposed that every missed payment was a new cause of action and that the loan would decelerate upon voluntary dismissal. That bill was down on arrival and never made it out of committee. Is there any way for them to decelerate the loan? I know there's no notice in this case for that. Would that be enough? Well, here's the kicker, Judge. When we filed our motion to dismiss, we attached an affidavit with exhibits that were uncontroverted. Plaintiff's response doesn't contain an affidavit. It doesn't contain exhibits. Where are the notices from plaintiff? Hey, we've decelerated your loan. If it wasn't by operation of law, but they were required to send a notice, where is that notice? Where is the notice of any payments? Counsel, they didn't send a notice. I'm talking about generally as a policy. Is that a way, do you think, that they could have started a new transaction? No, I believe that deceleration occurs when there's a new promise to pay, a reinstatement, or a modification. You could look at paragraph 10 of the mortgage contract. Paragraph 10 of the mortgage contract outlines what is required for reinstatement. And it states a lump sum of all current amounts owed. And in the first point in the plaintiff's brief, they state that upon voluntary dismissal, the note was reinstated. I've litigated almost 200 foreclosure cases, and I've never seen on a voluntary dismissal that the loans was reinstated, and everyone gets to pay, and they're back on to normal monthly installments. That doesn't exist. But if it did exist, where is the correspondence to that effect? Because my client filed an uncontroverted affidavit stating she received one notice of acceleration letter, that she did not care about the date alleged in the breach, and that the loan was accelerated. They have no counter affidavit, no exhibits, and they waive this issue in the trial court. Those are factual issues. So as a matter of law, you're saying it's not a reinstatement? That's right. Well, that's right. That's not a reinstatement. The contract as well. The contract as well says it's a reinstatement, Your Honor. So it's a legal fiction essentially saying that the loan decelerates and reinstates. That's not what the contract says. The contract says you pay us the lump sum and bring this thing current. So again, it's a legal fiction. And moving forward, so there was no counter affidavit, as I stated. They waive that argument. That's very important. We brought our affidavit. We allege specific facts. There was an invocation of the acceleration clause. The note was accelerated. They demanded the full amounts due. A lot of these arguments today are completely unsupported in the trial court record. The brief is only 10 pages, I believe. And the 10-page brief essentially sticks to these arguments that every mispayment is a new cause of action and that the voluntary dismissal reinstated the loan. But that is simply a legal fiction. That's not how these cases work. And if this court was to adopt that position, that means it's the passage of time. They can just keep refiling these cases. A homeowner defaults in 2012. You've got nothing that changes over 10 years, but the passage of time changes. So they're like, okay, well, let's move the default date up to this. Let's move the default date up to this date. And that's how they're attempting to get around this single refiling rule. It's a departure from our legislature. There's no exceptions whatsoever in this statute. The Supreme Court has addressed this issue. And the Supreme Court granted leave to the AMACI, American League Financial Network, to file a brief on behalf of First Midwest Bank. And the AMACI made these same arguments here, which I included a link in my brief saying that the loan decelerates upon voluntary dismissal and that every mispayment is a new cause of action. So the Supreme Court has seen these arguments as well in Cabo. Whether or not that's significant and it was in their input how they came to the decision, they still upheld the dismissal. And again, like this case, that followed an origination of a mortgage loan, a voluntary dismissal in the first case, a refiling, and then a second impermissible refiling. In this case, the operative facts haven't changed. And that's the key analysis here as well. The plaintiff sought to educate the rights of the parties on the exact same mortgage, note, loan modification. Sought the same election to accelerate the entire debt under the mortgage and note. Was filed against the same defendant. Alleged the same original indebtedness, $364,828, with an attached modification indebtedness of $384,469. Those are all the facts leading into the first foreclosure. Those are the operative facts. There are no new operative facts. There's no new cause of action for them to be able to continue to refile these cases. And this notion that you can remove payments or subtract payments or credit payments to usurp the statute has been rejected by the Stigler Court. The Stigler Court states, as mentioned, there was a... What paragraph are you in, counsel? Huh? What paragraph are you in? 57. Thank you. I didn't expect you guys to have opinions for it, though. But paragraph 57, Your Honor, states, as mentioned, there was only one default by the Stiglers, followed by a failure to cure that default and an acceleration of the note. The amount of interest sought by Deutsche Bank was entirely dependent on when they filed their complaints as interest kept changing... I'm sorry, everybody. As interest kept accruing on the note, allowing Deutsche Bank to circumvent the single refiling rule simply by changing the date from which it sought accrued interest would mean that Deutsche Bank's claims would never be borrowed by any prior advocation because interest kept accruing as time passed following the initial default. And then they cite Gulotta stating, finding that allowing plaintiffs to save their claims from the single refiling rule simply by changing the relief slot in their complaint would be like allowing a plaintiff in a personal injury case to save his claim by amending his complaint to forego a couple months of lost wages. So the default is what it is. The operative facts of the documents that are being sued on, there's been no change in cause of action, and they cannot manipulate the numbers to usurp the single refiling rule. The first Mr. Westbank, first Cabo, as well as Stigler, I believe, control this outcome. The trial court heavily relied on those decisions. But it's worth noting a couple points from the federal courts. And Skidney, the federal court, said, more to the point, U.S. Bank's trust's narrow conception of res judo rep cata cannot be correct. Under that conception, U.S. Bank's trust claims would never be borrowed by any prior advocation as long as the bank can vary its complaints ever so slightly by changing the default date, regardless of whether that reality is changed at all. We may go on to say a bit more. And Webster Bank, the court states, Pierce advocates for a significantly narrow interpretation of the transactional test, which would result in the unsustainable situation which Webster's claims would never be borrowed by any prior advocation as long as the bank can vary its complaints ever so slightly by changing the default date. So it's worth noting as well that the Supreme Court has said that the res judo cata test, transactional test, is a convenient test to use, but it's two separate doctrines. The single refining rule is in and of itself its own statute. And there has to be a starting point how you assess a voluntary dismissal. And in my position, it's the acceleration of the note, the default, the demanding of the full sums due. It's an election of remedies. So in this case, the defendant was in default on May of 2012 under the mortgage, as reflected in the 2012 complaint. That operative fact did not change when the plaintiff filed the 2018 foreclosure complaint and the 2019 foreclosure complaint. Accordingly, there's no new default following plaintiff's election to accelerate the note. I think the failure to provide a counteract is problematic as well. Justice Hutchinson said in the Dubervet opinion, she's like, even if it's true that a voluntary dismissal deaccelerates the note, that would require the bank to send a new notice of default. There's no new notice of default in this record because there's no counter affidavit. There's no exhibits. There's absolutely nothing. The Supreme Court rejected that, I should note. They state that once the loan's been accelerated, that's the cause of action. And if another notice of default is sent, that sets an offer to reinstate the loan. But Justice Hutchinson did say in Dubervet, if there was any legal merit to a voluntary dismissal effectively reinstating the loan or replacing the parties back in a new position, then you would need a new notice of default following that. There's no notice of default in this record. There's no exhibits at all in this record. So with respect to Plaintiff's first argument for voluntary dismissal, the first action deaccelerated and thereby reinstated the loan, well, that's simply not true. It violates paragraph 10 of the mortgage, which requires a lump sum. It's illegal fiction. The homeowners are certainly not placed back into their normal place. If anything, the loan remains accelerated, and then they continue to file these cases. Again, without a material change in the agreement, modification or otherwise, it doesn't make any sense. Plaintiff's second argument that the second case on involuntary dismissal allowed them to file again after that is also untrue. Under the Timberlake case, you can only refile once after your voluntary dismissal. And the reason you lose the second case is of no consequence at all. You can voluntarily dismiss it yourself. It can be involuntarily dismissed. That's your refiling. The analysis starts at the voluntary dismissal. The Stigler court noted that once the Stiglers defaulted on the note and Deutsche Bank invoked the acceleration clause and filed a foreclosure action, the contract became indivisible, and the obligations of page E installment merged into one obligation to pay the entire balance on the note. And that is our position, and that remains true once they accelerated the note. Again, there's no evidence to the contrary. There's only evidence to my client. I also cited 735, ILC. Time is up. Oh, okay. Okay, thank you. I have a few questions. Yes, go right ahead. Your affidavit, which you speak of often, says that I did not make payments pursuant to the terms of the June 15, 2012 letter. There are 24 of you affidavit, but your client did make payments. She made three payments to the bank, or they made three payments to the bank and then decided not to take the terms that were offered to them. Is that correct? So first I want to address, Your Honor, that there's no argument of payment in the trial court. The 10th page brief says nothing about payments, and they raise that for the first time on appeal, and they're arguing a different case. So I didn't even respond to that because they waived that argument. There's no argument about payments. But my investigation of the case found that my client sent a qualified written request asking why a number of payments had been credited to the account in the amount of about $10,780. And Wells Fargo self-funded its own money, which is explaining why you have these payments moving, several of them. The client was offered a TPP where she made three payments and she rejected the offer, and so the cause of action remained the same. However, Wells Fargo paid over an additional $10,000 of their own money, which is how they're explaining. It is in the record that she did make the three payments, correct? She made those, and then she rejected the TPP. Okay. And I'm not saying that your affidavit is misleading. No. It says that she didn't, in response to that particular letter, which she's... Are you looking at the affidavit in support of the amended motion to dismiss? Yeah. 24. Your problem, I guess, is not here. But, yes, in this leads to my question. We talked about public policy. What is going to cause the bank to renegotiate in the future if they stop pursuing their suit? Your Honor, they always make those arguments. Whether they lose on a standing case or something else, nothing ever changes. What's the answer, though? I don't think it will change anything. I think they'll understand that with these cases, they've got to be very careful, and that when they have a voluntary dismissal, they have to recognize that they can only file one time, absent a change of material terms, modification, reinstatement, a new promise to pay. Section 513.206 states, a cause of action on a promissory note paid on a definite date accrues on the or the date upon which a promissory note is accelerated. So that's your benchmark there. You have acceleration, and to bring out acceleration, credit payments and this and that, you need a new promise to pay. Because the loan's been accelerated. They're demanding the full amount due. And you can't decelerate the loan, apply a payment, and then decelerate it. You're getting in the monkey business, so to speak, here. And there's really no evidence that ever occurred. But, again, there was no argument whatsoever regarding any payments in the trial court. The fact they brought up an appeal should be waived. It's arguing a new case. And I don't believe they believe that's their theory of the case anyways. They believe their theory of the case is every missed payment is a new cause of action. The loan voluntarily decelerates upon dismissal. And when I raised in my response brief that that argument regarding payment was waived, in reply they said nothing and dropped it again. Thank you. Thank you, Counsel. Counsel, you may reply. Thank you, Your Honor. I'm going to try to hit a few points that were just discussed. First of all, much of that discussion, I think, overlooks the background principle. Again, this notion that a borrower or a lender, rather, could keep bringing a new suit. That is, in fact, the background rule that, as we discussed earlier, applies in the case where there is a new payment due every month. What's different about this case is the acceleration. And as Counsel correctly said a moment ago, he said the case remained, the acceleration remained in effect throughout the three cases. That's essential. Without the acceleration remaining in place throughout the three cases, the moment that deaccelerates, even for a month or two, the new default rule applies and you have a new cause of action. Well, that's why Timberlake is irrelevant here. Timberlake just makes the basic point. It's a two-voluntary dismissal case. It was referred to a moment ago. That just says that, look, generally speaking, when we're talking about the single refiling rule, the reason that the second case gets disposed of is not relevant. But here, of course it is. That was not a lending case. Here it's absolutely important because the reason the second case was dismissed is what gave rise, at a minimum, again, we can talk about voluntary dismissal, but at a minimum, the involuntary dismissal of that second case reaccelerated, reinstated and deaccelerated that loan, which means the new default rule was back in effect. That's the critical effect, at a minimum, of the involuntary dismissal. Counsel said very little about involuntary dismissal other than discussing that. The other cases talking about were voluntary dismissal cases. Cabo, the case he read from paragraph 57, if I may, paragraph 54 of that same case, this is, excuse me, Sigler, of that same decision on which defendants so heavily rely, goes on to say, when a mortgager prevails in a foreclosure action by demonstrating that she was not in default on the payment alleged to be in default or by dismissal with prejudice, our case, the result is to place the mortgagor and the mortgagee back in the same contractual relationship with the same continuing obligations, that is monthly payments. As a result, a subsequent default by the mortgagor would result in a separate cause of actions. So even Sigler recognizes that in a case unlike Sigler where you have an involuntary dismissal, then by operation of law, regardless of notice or anything else, by operation of law, the parties are returned to their prior position of paying on a monthly basis. I would further note that, again, Dubrovay, we didn't get into Dubrovay in the opening. That's a second argument. That's the idea, and we do argue this in our brief, that Dubrovay was correctly decided in contrast to Sigler. Again, this Court needn't reach that question where there's a divide in the appellate courts as to the effect of an involuntary or, excuse me, effect of a voluntary dismissal. But we believe that Dubrovay was correctly decided. But I do want to remind the Court in rebuttal that the discussion about Dubrovay, about Justice Hutchinson's dissent and so forth, all of that surrounds the separate question of whether a voluntary dismissal has the independent effect of reinstating the loan. We firmly believe that it does and argue as much in our briefs. Today, of course, we've been talking about the involuntary dismissal. And again, to note, this would be the first case, and there wasn't one discussed today in which a court held that an involuntary dismissal does not have the effect of returning the parties to their prior place for purposes of both res judicata as well as by necessarily then Section 217. I also just wanted to comment on one point. The point was made that the way to reinstate under the contract, excuse me, and again, we think that's irrelevant here. It happens as a matter of law with the involuntary and we would say also voluntary dismissal. But it does talk about paying all of the past due. Recall that by the time the third complaint is filed, there's nothing past due because they have just, we're back, all of that had been wiped, seven years had been wiped out of principle. So the notion that you could… It's set in the record, counsel. It is in the, yes, the complaint. The third complaint shows the reduced… Original amount in the default originally occurred. Exactly, yes. It shows the original principle balance is listed as well as the current principle sought. The difference being, and you can also look at the second complaint and see there's about a $47,000 difference in principle balance owed. There was also an affidavit filed that explains, I believe it's called the amount past due, or about due and owning, which is also in the record, which also explains and breaks down some of those numbers. Justice, can I continue on this? Sure. Also, involuntary dismissal can be done with prejudice or without prejudice, right? We give you the right to refile. We've seen a distinction here. In your particular case, it was with prejudice. The second complaint was dismissed with prejudice. You didn't bring the third until, I can't remember the date, but it set out. Your 30 days ran after the involuntary with prejudice occurred. Do you see a distinction? I don't, Your Honor, but the fact that it's with prejudice here could only make it an easier case, frankly. But I don't see a difference. And I actually, it reminds me of a quick point that was raised that jubilee is different. And, again, let's get you into the voluntary dismissal category. The due brevet was different because there there was a notice of default provided prior to the filing of the foreclosure action. And that was a basis for distinguishing that case in the context of voluntary dismissal. That was also true in Siegler. And I just read that Paragraph 54. Notwithstanding the fact there was a separate notice of acceleration submitted, given to the borrower earlier, the court still goes on to say, look, if there had been an involuntary dismissal here, then you can bring a new cause of action as the lender. Thank you. Any other questions? Thank you, counsel. Thank you, counsel, both, for this matter, arguments in this matter. It will be taken under advisement that this position shall issue, and the court will stand at brief recess.